UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANTHUS BLEDSOE					CIVIL ACTION NO. 10-cv-0302

VERSUS						JUDGE WALTER

WARDEN, ALLEN CORRECTIONAL			MAGISTRATE JUDGE HORNSBY
CENTER

## REPORT AND RECOMMENDATION

### Introduction

Anthus Bledsoe ("Petitioner") pleaded guilty in a Sabine Parish state court to first degree robbery, and he was sentenced to 30 years. He challenged his sentence on an unsuccessful direct appeal. He then asserted an ineffective assistance of counsel claim in a state post-conviction application. He now seeks federal habeas relief on the ineffective assistance claim. For the reasons that follow, it is recommended the petition be denied.

### Relevant Facts

Petitioner and two others were charged with the armed robbery of an employee of Rent Way. The sentence for armed robbery ranges from 10 to 99 years. After approximately one year of pretrial proceedings, which included a successful motion to sever and the denial of a motion to suppress, a plea bargain agreement was reached on the day of trial. Petitioner was allowed to plead guilty to a lesser charge of first degree robbery, which carries a sentence ranging from three to 40 years. The prosecutor's offer allowed Petitioner to choose

an agreed sentence of 10 years or undergo a pre-sentence investigation and be sentenced by the court.

Defense counsel recited the offer at the guilty plea hearing. He stated that Petitioner, after conversation with his mother and counsel, had chosen to accept the offer. He added that Petitioner elected to have a pre-sentence investigation and be sentenced by the court. Counsel said the Alford plea was entered for several reasons. He first stated that Sheena Easily was a "vital witness" for the defense, but she had disappeared between the arraignment and first pretrial conference. He said that Ms. Easily had disappeared after Hurricane Katrina hit the Houston, Texas area where she lived. Counsel had located her once in a women's shelter in Austin, but she was no longer there. He managed to find a phone number for her, but there was no answer.

Counsel said that a second defense witness, Mary Ann Waines, lived in Logansport, Louisiana. Counsel said that he had issued a subpoena for her, but the DeSoto Parish sheriff had yet to serve the subpoena. Counsel reported that he spoke with the witness by phone a few days earlier and notified her of the day the trial would begin, but the witness said she had not received a subpoena and needed a ride. Petitioner's mother called the witness and offered to drive her to the trial, but the witness then said she had not received a subpoena and was not coming to the trial. Counsel said these witnesses would have been crucial to a successful defense, so Petitioner chose to accept the plea bargain.

At sentencing, the judge noted that Petitioner was a third-felony offender, with charges including burglary and sexual assault, and he had been out of prison for only eight

months when he was arrested on the robbery charge. The court noted that Petitioner or others acting on his behalf had used threats to influence the outcome of the criminal proceedings, and there were no mitigating factors. He imposed a sentence of 30 years.

**Timeliness**

### A. Court May Raise Sua Sponte

The State's answer provides: "It further appears that this Petition is timely, in that the Petition was filed within one year of State Court's final ruling." The supporting memorandum states: "Upon review of the record, it appears that this Petition for Habeas Corpus was properly and timely filed." The court often sees boilerplate language such as this in answers filed by district attorneys who are not familiar with the rather complex area of calculating the timeliness of habeas petitions. They often unknowingly overlook a defense and risk waiving it by including such language in their answers. The petition in this case is, in fact, not timely.

The State made a miscalculation of timeliness in Day v. McDonough, 126 S.Ct. 1675 (2006), and a magistrate judge noted the mistake. After affording the parties an opportunity to address the timeliness issue, the magistrate judge recommended the petition be dismissed as untimely, and it was. The Supreme Court held that the district court was permitted, but not obligated, to consider sua sponte the timeliness of a state prisoner's habeas petition.

### B. Timeliness Calculation

A one-year period of limitations applies to petitions for habeas corpus. In an ordinary case such as this one the limitation period runs from the date on which the state court

judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The first step in assessing timeliness is, therefore, to determine when Petitioner's conviction became final and triggered the commencement of the one-year limitations period.

In a typical case where a convicted person timely pursues his direct appeal through a writ application to the Supreme Court of Louisiana, the conviction becomes final for purposes of Section 2244 ninety days after the state's high court enters its judgment, which is when the time to file a petition for writ of certiorari with the United States Supreme Court has expired. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). The rule is different if the defendant does not complete the appellate process and reach the state's highest court. "If the defendant stops the appeal process before that point, the conviction becomes final when the time for seeking further direct review in the state court expires." Roberts, 319 F.3d at 694.

Petitioner pursued a direct appeal to the intermediate appellate court. State v. Bledsoe, 963 So. 2d 397 (La. App. 3rd Cir. 2007). Petitioner admits in his petition that "writs were not taken to the Louisiana Supreme Court" so that his conviction thereafter became final. The appellate opinion was issued and mailed on the June 6, 2007, so the conviction became final 30 days later when the deadline for filing a writ application to the Supreme Court of Louisiana expired. See Louisiana Supreme Court Rule X, § 5(a). Accordingly, the one-year period of limitation began on July 6, 2007.

This is where the State made its mistake in assessing timeliness. The State recites the procedural history of the case in its memorandum and mistakenly states: "Defendant applied for writs to the Louisiana Supreme Court which was denied under Docket No. 2006-KO-1249." Finality of the conviction would have been delayed during the pendency of a writ application, but there was none. There is no evidence that Petitioner applied for a writ after his appeal, and Petitioner does not claim to have done so. It appears the docket number cited by the State actually belongs to Stanford Staton, another Sabine Parish convict who has a habeas petition before this court.

With the one-year period beginning July 6, 2007, the next issue is how long it was tolled by the post-conviction application. The time during which a properly filed application for state post-conviction review is pending is not counted toward the period of limitation. 28 U.S.C. § 2244(d)(2). A Louisiana prisoner benefits from the mailbox rule when he tenders his application for mailing to the state court. Causey v. Cain, 450 F.3d 601 (5th Cir. 2006). Petitioner signed and dated his application July 3, 2008, so that is the earliest date he could have possibly deposited it for mailing and made it toll. The court will give him the benefit of that earliest date. A total of 363 days expired between the finality of his conviction on July 6, 2007 and the commencement of tolling on July 3, 2008.

Petitioner pursued the application through the state courts until the Supreme Court of Louisiana denied a writ application on January 8, 2010. State ex rel Bledsoe v. State, 24 So. 3d 866 (La. 2010). The tolling stopped at that point. Lawrence v. Florida, 127 S.Ct. 1079

(2007). Petitioner had two days left to effectively file his federal petition by tendering it to prison officials for mailing. Spotville v. Cain, 149 F.3d 374 (5th Cir. 1998).

Petitioner did not date his signature page on his federal petition. The cover letter that accompanies his petition is dated February 5, 2010, and the envelope in which it was mailed was postmarked February 10, 2010. This court received it on February 11. The earliest date on the petition is January 31, 2010, which appears on a footer printed at the bottom of each page of the petition. Thus, the earliest date Petitioner could have filed his federal petition was January 31, 2010, by which 23 more days had passed since the tolling effect of the State application ceased. Thus, a total of 386 days of un-tolled time passed before Petitioner filed his federal petition, making it untimely.

### C. Amendment to Answer; Opportunity to Respond

The Supreme Court suggested in Day that the court might inform the State of its error and entertain an amendment to the State's answer. The State is advised of that opportunity and may file a motion to amend its answer and raise the timeliness defense if it does so within the objections period that follows this Report and Recommendation. Day also stated that the court must, before acting on its own initiative, accord the parties fair notice and an opportunity to present their positions. This recommendation sets forth the court's position in detail and best informs Petitioner of the precise timeliness issues he faces. The objections period that follows allows him a reasonable opportunity to respond to the defense. See Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998).

**Ineffective Assistance of Counsel**

The court will, in the alternative, address the merits of ineffective assistance of counsel claim. Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was *deficient* only if he made errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington,104 S.Ct. 2052, 2064 (1984). To show *prejudice* in a guilty plea case "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 106 S.Ct. 366, 370 (1985). The test for whether petitioner would have insisted on trial is an objective one and "[s]imply alleging prejudice will not suffice." Mangum v. Hargett, 67 F.3d 80, 84 (5th Cir. 1995).

Petitioner argued in his post-conviction application that it was his desire to go to trial, but counsel failed to interview and subpoena his alibi witnesses, thus coercing him to plead guilty to the lesser offense. (He also argued that counsel gave poor advice to choose the pre-sentence investigation option rather than the agreed 10-year sentence, but that is not raised in the federal petition.) Petitioner has not presented to the state or federal court any statement, sworn or not, by the purported alibi witnesses that would support his defense. In fact, he has not even articulated in his filings the facts these witnesses would supposedly offer. He

simply made a conclusory assertion that counsel should have been able to secure the presence of those witnesses.

The trial court issued a short opinion that found the application had no basis in fact or law. The appellate court wrote only: "There is no error in the trial court's denial of Relator's application for post-conviction relief." The Supreme Court of Louisiana denied writs without comment.

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

Finally, a Strickland petitioner must overcome the limitations of Section 2254(d) "on the record that was before the state court." Cullen v. Pinholster, 131 S.Ct. 1388 (2011). It

is reversible error for a federal district court to hold a federal hearing to flesh out such a claim. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011).

It is impossible to say on the rather limited record Petitioner has presented the court that the state court's rejection of his conclusory claim was an objectively unreasonable application of the Strickland standards. The guilty plea hearing shows that Petitioner was well aware of the issues regarding the case and the availability of the witnesses. He nonetheless knowingly and voluntarily entered his plea without any complaint about the absence of the witnesses, statement that he wished to go to trial, or the like. He has not made the showing required to have the federal court vacate his conviction.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and that it be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of February, 2013.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE